GOVERNMENT
EXHIBIT

1

## AFFIDAVIT OF SPECIAL AGENT JENNIFER L. GEREGA

I, Jennifer L. Gerega, being duly sworn, depose and state as follows:

ALLOWED David H. Hennessy U.S.M.J.
Feb 16, 2024

1.      I have been employed as a Special Agent of the FBI for approximately twenty years.  I am currently assigned to the Worcester Resident Agency of the Boston Division and the Child Exploitation and Human Trafficking Task Force.  While employed by the FBI, I have investigated federal criminal violations related to, among other things, the online sexual exploitation of children.  I have gained experience through the FBI Academy's Basic Crimes Against Children course, conferences involving Innocent Images and Crimes Against Children, and I have investigated numerous child exploitation cases.  I have received training in the area of child sexual abuse material and child exploitation, and I have had the opportunity to observe and review countless examples of child pornography (as defined in Title 18, United States Code, Section 2256(8)), in all forms of media, including computer media.

2.      As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

## PURPOSE OF AFFIDAVIT

3.      I am submitting this affidavit in support of an application for a warrant authorizing the search of the Samsung cell phone, IMEI 355134285735971 (hereinafter, the "Samsung Phone") that law enforcement seized during the arrest of Jalen LATIMER (born 1998) on January 30, 2024, as more fully described in Attachment A.  The information to be seized is described in the following paragraphs and in Attachment B.

4.      As described herein, there is probable cause to believe the Samsung Phone contains evidence of a crime, contraband, fruits of crime, or other items illegally possessed, namely Distribution, Receipt and Possession of Child Pornography, Traveling in Interstate Commerce to Engage in a Sexual Act with a Minor, and Sexual Exploitation of Children, in violation of Title 18, United States Code, Sections 2252A(a)(2) and (a)(5)(b), 2423(b) and 2251(a), respectively (the "Target Offenses").

5.      The facts in this affidavit come from my personal observations, and review of information and records provided to me by other law enforcement agents, and civilian witnesses.  This affidavit is intended to only establish the requisite probable cause for the requested search warrant and, therefore, does not set forth all my knowledge about this matter.

### RELEVANT STATUTES

6.      Title 18, United States Code, Section 2252A(a)(2) makes it illegal to distribute and/ or receive any child pornography that has been mailed, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or produced using materials that were so mailed, shipped or transported.

7.      Title 18, United States Code, Section 2252A(a)(5)(B) makes it illegal for any person to knowing possess, or knowingly access with intent to view, any material that contains an image of child pornography that has been mailed, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or produced using materials that were so mailed, shipped or transported, including by computer.

8.      Title 18, United States Code, Section 2423(b) makes it illegal for any person to travel in interstate commerce for the purpose of engaging in any illegal sexual conduct with a minor.

9.      Title 18, United States Code, Section 2251(a) makes it illegal for any person to persuade, induce, entice or coerce any minor to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

10.     Title 18, United States Code, Section 2256(5) defines "visual depictions," in pertinent part, to include data stored on computer disk or by electronic means, which is capable of conversion into a visual image.

11. Title 18, United States Code, Section 2256(2) defines "sexually explicit conduct," to mean actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

12. For purposes of this affidavit, any individual below the age of 18 will be referred to as a "child" or "minor," and any visual depiction of a child or minor engaging in "sexually explicit conduct," as that term is defined in Title 18, United States Code, Section 2256(2)(A), will be referred to as "child pornography."

## BACKGROUND OF INVESTIGATION

A. <u>Arrest of Michael LAMOUNTAIN</u>

13. On or about August 28, 2023, Worcester, Massachusetts Police arrested Michael LAMOUNTAIN (born 1982) and charged him with Possession of Child Pornography, Distribution of Child Pornography, Distribution Obscene Matter to a Minor, Intimidation of a Witness, and Aggravated Rape of a Child in Worcester District Court.

14. On or about September 28, 2023, Oxford, Massachusetts Police charged LAMOUNTAIN with Intimidation of a Witness, Posing a Child in State of Nudity, Possession of Child Pornography, Aggravated Indecent A&B on a Child (x3), and Aggravated Rape of a Child (x9) in Dudley District Court.

    B.    <u>Search of LAMOUNTAIN's Electronic Devices and LATIMER Communications</u>

15.    Investigators obtained state search warrants for two iPhones and a Dell laptop belonging to LAMOUNTAIN.[1]

16.    While conducting the forensic examination of LAMOUNTAIN's iPhone 11 assigned phone number 508-735-7072 (the "Lamountain-7072 phone"), Worcester Detective Joseph Bisceglia discovered a series of conversations between LAMOUNTAIN and phone numbers registered to Jalen LATIMER.

17.    Specifically, on July 19, 2023, LAMOUNTAIN engaged in a text message conversation with the user of phone number (617) 390-4504 (the "Latimer-4504 Phone").  According to records obtained from AT&T, LATIMER is the subscriber of the Latimer-4504 Phone, with a billing address of 19 Dewolf Street, Boston, Massachusetts, and email address of jjlats.1998@gmail.com.  AT&T records further identified the Latimer-4504 Phone as an active prepaid account with a service start date of June 24, 2023.[2]  The text of the conversation is as follows (all times are recorded in UTC+0):

LAMOUNTAIN (8:38:31 PM):    ███████████████████

LATIMER (8:39:05 PM):    ████████ "

LATIMER (8:39:53 PM):    ███████████████

LAMOUNTAIN (8:42:18 PM):    ██████████████████████

████████████████████████

████████

---

█ ██████████████████████████████

█ ████████████████████████

█ ██████████████████████████████
█████████████

LATIMER (8:44:14 PM): ██████████████

LATIMER (8:46:57 PM): ██████████████████

██████████████

LAMOUNTAIN (8:52:54 PM): ████████████████████

██████████████████████

████████████████████

████████████████████

LATIMER (8:55:29 PM): █████████████

LATIMER (8:59:01 PM): ██████████████

LAMOUNTAIN (9:02:00 PM) : █████████ ███

LATIMER (9:03:27 PM): ███

LATIMER (9:04:07 PM): ███████████████

LATIMER (9:04:13 PM): ████████████

LAMOUNTAIN (9:11:02 PM): ████████████████████

18.     In the DCIM folder of the Lamountain-7072 phone,[5] investigators located a screenshot of a portion of this conversation.  That screenshot showed that immediately prior to LATIMER stating, ████ ████████ LAMOUNTAIN sent an image to LATIMER.  The bottom portion of the image is visible in the screenshot. The full image was located in the DCIM folder and depicts LAMOUNTAIN, ████ ████████████████████████████████████████████████

_____

█████████████████████████████████████████████████████

████████████████████████████

[5] A DCIM, or Digital Camera Images folder, is a folder that stores images captured using the phone's camera and screenshots created by the phone.

Metadata associated with that image indicates it was taken on July 19, 2023, at 8:40:01 PM, the same day it was sent to LATIMER.

      C.    <u>The June 2023 Arrest of LATIMER</u>

     19.    Approximately one month before the above-detailed text conversation, on June 23, 2023, Rhode Island State Police (RISP) arrested LATIMER and charged him in Rhode Island state court with possession of child pornography.

     20.    According to RISP, on May 16, 2023, the National Center for Missing and Exploited Children (NCMEC) received a Cyber Tipline Report from Snap Inc. ("Snap") reporting the upload of one file depicting apparent child pornography by an individual using username "graysonmiles19" on May 15, 2023, at 23:22:04 UTC.  That file is specifically described as follows:

         a.



     21.    In its CyberTip, Snap provided a date of birth for the user (born 1998) and the email address of jalen.latimer@yahoo.com as being associated with the account.  Snap also identified the IP address used to upload the file.

     22.    The IP address associated with the Snap upload was traced to 71 Winter Court, Woonsocket, Rhode Island.  LATIMER resided at 71 Winter Court in Woonsocket in May 2023.

     23.    On June 22, 2023, RISP obtained a state search warrant for 71 Winter Court and an arrest warrant for LATIMER.  On June 23, 2023, RISP executed the search warrant and located LATIMER in a bedroom in the residence.  RISP advised LATIMER of his Miranda Rights.  Thereafter, LATIMER provided the following information to investigators:

     a.   LATIMER identified his email address as jjlats.1998@gmail.com, and phone number as 857-417-9096;

     b.   LATIMER identified his Snapchat account as "graysonmiles";

     c.   LATIMER admitted that he traded child pornography on Snapchat; and

     d.   LATIMER has masturbated to and saved files depicting child pornography.

24.     RISP seized the Latimer-9096 phone from LATIMER's residence.  An on-scene forensic preview of the Latimer-9096 phone revealed several images depicting child pornography within the Telegram application installed on the phone.

25.     That same day, June 23, 2023, RISP arrested LATIMER and transported him to the state district court for arraignment.  The district court released LATIMER on $2500 surety bail and with conditions to have no contact with minors and no Internet usage except for employment, banking, or religious reasons.  In connection with their investigation, RISP conducted a full forensic extraction of the Latimer-9096 Phone.

26.     On February 1, 2024, United States Magistrate Judge Lincoln D. Almond, District of Rhode Island, authorized a federal search warrant for the Latimer-9096 phone.[6]

---

[6] An identical forensic copy of the raw data contained within the Latimer-9096 was provided to investigators by the RISP to complete the forensic examination/analysis of the data based upon the authority granted by the federal search warrant issued in the District of Rhode Island on February 1, 2024, Case No. 24-SW-021-LDA.

D.   Subsequent Contact between LATIMER and LAMOUNTAIN

27.     As noted above, LATIMER activated the Latimer-4504 Phone on June 24, 2023, the day after his arrest by RISP.  On June 29, 2023, LATIMER using the Latimer-4504 Phone, exchanged the following messages with LAMOUNTAIN:

LATIMER (1:11:01 PM):[7]       "It's j.  New number. A LOT happened :/"
LATIMER (1:11:27 PM):          "Still have my watch so I was able to see the
                               last message, but probably shouldn't talk
                               about any games for a while"
LATIMER (1:30:00 PM):          "You might want to do some damage control
                               with that picture though."
LAMOUNTAIN (1:43:39 PM):  "Call me."

28.     According to the forensic examination of the Lamountain-7072 Phone, LATIMER called LAMOUNTAIN at 1:44 PM. The call was 3:13 in length.

29.     On June 30, 2023 at 1:57 AM, LAMOUNTAIN sent the following text to LATIMER: "laptops gone cell phone 2."

E.   IMAGES Depicting LATIMER on LAMOUNTAIN's Dell Laptop

30.     While conducting the forensic examination of the Dell Inspiron laptop seized from LAMOUNTAIN's residence, FBI Task Force Officer Brian Bisceglia discovered a series of seven (7) video files located in a user created folder identified as \users\myne\Desktop\New Folder (3)\d\.  The exif data for all of the videos indicate that they were created with an iPhone SE (3rd generation) on or about July 7, 2022, between 9:02 and 9:06 AM (UTC + 0).  The GPS coordinates for all seven videos indicate they were created ██████████████ Oxford, Massachusetts.[8]

---

[7] All times in UTC +0.

[8] ████████████████████████████████████████

31.     The seven video files appear to be part of one incident, depicting LAMOUNTAIN, an unidentified black male (UBM), and an ████████ minor ████████████████████ in each video.  The 2-minute, 8-second video file identified as IMG_0036.MOV, is specifically described as follows:



    c.   The UBM is depicted ███████████████████████████

████    On his right forearm, tattoos of a sea turtle and goldfish cracker are fully visible

and a tattoo of what appears to the tail of a dolphin or whale is partially visible.

    d.   LAMOUNTAIN has his hair pulled back with a pink scrunchie ██████████

██████████████████████

    e.   Based upon the angle and direction of the camera angle, it appears that the UBM

is holding the recording device in his left hand.

33.    ████████████████████████████████

                              █████████████████████████████

████████████████████████████████████

                     ████████████████████████████

████████████

                     ███████████████████████████████

████████████████████████

34.      On or about January 30, 2024, LATIMER was arrested in Norwood Massachusetts and

transported to the Oxford Massachusetts Police Department for booking.

35.      I reviewed photographs of LATIMER taken by the Oxford Police.  Those photos depict

tattoos on the inside of LATIMER's right arm that match those seen on UBM during at least one of the

videos referenced above, including the goldfish, turtle, and tail of a dolphin:

---

█ ██████████████████████████████████



36.      RISP provided photos taken of LATIMER during the June 23, 2023 booking. LATIMER

had a goatee and wore black, plastic-framed, rectangular shaped glasses that resemble the glasses worn by

the UBM in the videos described above.

| Screenshot of UBM from the video series described above | June 23, 2023 Photograph of LATIMER taken by Rhode Island State Police |
| --- | --- |
|  | |

37.      Further, comparison of LATIMER's Massachusetts ID photograph with the UBM

depicted in the above-described series of videos also yielded a resemblance.

38.      Finally, a Google query for "Jalen Latimer" identified a May 19, 2018, article form the

website dailymail.co.uk entitled, "Hanging out on the subway: Spider-Man spotted in Boston Metro is

revealed to be Chipotle employee, 19, who dons the sleek suit after work each day." The article later

identified "Spider-Man" as Jalen LATIMER. [11]

F.   Communications Between the Lamountain-7072 Phone and the Latimer-9096 Phone

39.   Within the DCIM folder of the Lamountain-7072 Phone, investigators also located a

February 8, 2023, screenshot that depicted a text conversation with the user of phone number 857-417-

9096 (i.e. Latimer-9096 phone).  According to AT&T records, the Latimer-9096 Phone is a postpaid

number subscribed to "Jalen Latimer."  The billing contact for the Samsung Phone is Barbara Williamson,

45 Moville St., West Roxbury, Massachusetts.  The service start date for the phone was August 24, 2020.

40.   In the text correspondence captured in the screenshot, LAMOUNTAIN states that he

loves "nyc" and provides a phone number for "Spa Castle."  When LATIMER asked LAMOUNTAIN

what Spa Castle is, LAMOUNTAIN responded:



In response, LATIMER wrote, ▆▆▆ "

41.   On March 3, 2023, the phone number for the Latimer-9096 Phone (857-417-9096) was

added to the Lamountain-7072 contacts as "Jj."  According to records from AT&T, between July 8, 2022

and July 1, 2023, the Lamountain-7072 Phone sent 631 text messages to the Latimer-9096 Phone.

Between July 7, 2022 and June 21, 2023, the Latimer-9096 Phone sent 1256 text messages to the

Lamountain-7072 Phone.

---

[11] In the short video contained within the article, LATIMER appears handing upside down at a Boston T
station waring a full body Spiderman suit.

[12] LAMOUNTAIN identified JV-2 by name in the text message.

42.     In addition to text messages, LAMOUNTAIN and LATIMER communicated via Snap during the time period that LATIMER possessed and utilized the Latimer-9096 Phone.  According to records related to LAMOUNTAIN's Snap account, on February 12, 2023, LAMOUNTAIN sent a Snap message to Snapchat user "jalenlatimer."

G.  Cash App Records

43.     The investigation revealed that LATIMER maintained a Cash App account in the name of "Jalen Latimer."[13]  The account identified the owner's year of birth (1998), with the last four digits of LATIMER's social security number and a mailing address of 71 Winter Court, Woonsocket, Rhode Island.

44.     According to records obtained from Block Inc, between January 6, 2022, and June 22, 2023, LATIMER's account engaged in over 500 Cash App transactions.  According to Block, the electronic device used to conduct those transactions was a Samsung SM-N986U named "Jalen's Note20," i.e. the same model of phone as the Latimer-9096 Phone.

45.     The "user alias" history of the Cash App account includes "jjlats98," "graysonmiles98." The SMS alias is 857-417-9096.

46.     Cash App records indicate that as of June 25, 2023, i.e. two days after LATIMER's arrest by RISP, the Latimer-9096 Phone was no longer used to access LATIMER's Cash App account. Transactions between June 25, 2023 and November 28, 2023, the date of the records return, indicate that a TINNO ATT U328AA phone was used to access the account.  According to ATT records of the Latimer-4504 Phone, the phone associated with that number was a TINNO U328AA.

H.  Worcester Superior Court Indictment of LAMOUNTAIN and LATIMER

47.     On January 26, 2024, the Worcester Superior Court returned indictments for

---

[13] Cash App is a financial services platform that allows a user to send and receive money using a digital application.

LAMOUNTAIN and LATIMER.  LAMOUNTAIN was indicted on the following charges:  Rape of a Child, Aggravated by Age Difference (x21); Indecent A&B on a Child (x6); Indecent A&B on a Child, Aggravated (x14); Depicting a Minor in Sexual Conduct (x8); Human Trafficking of a Under 18 Person (x8); Possession of Child Pornography (x4); Dissemination of Child Pornography (x2); and Intimidation of a Witness or Juror (x1).

48.     LATIMER was indicted on the following charges:  Rape of a Child, Aggravated Age Difference (x3); Indecent A&B on a Child Under 14 (x4); Human Trafficking of a Under 18 Person (x1); and Depicting Minor in Sexual Conduct (x1).  A state arrest warrant was issued on the same date for LATIMER.

I.   Arrest of LATIMER on Superior Court Warrant

49.     On January 30, 2024, LATIMER was arrested at his place of employment in Norwood, Massachusetts on the outstanding state warrant.  The Samsung Phone was seized was seized at the time of LATIMER's arrest.[14]  At the time of booking at the Oxford Police Department, LATIMER provided his phone number as (617)774-7962.

50.      On February 1, 2024, an administrative subpoena was served upon AT&T for the subscriber associated with cell phone number (617)774-7962.  On or about the same date, AT&T identified Jalen LATIMER, 15202 Chestnut W, Randolph, Massachusetts, as the subscriber with a service start date of December 10, 2023.  AT&T mobility records for the account identified the IMEI number 35513428573597 as being associated with a Samsung cell phone, model SM-A146U.

**PERSONS WHO PRODUCE, POSSESS AND/OR DISTRIUBUTE CHILD PORNOGRAPHY**

---

[14] A sticker on the back of the phone displays SM-A146U, 64 GB, serial number R9TWA0F8WPP and IMEI number 355134285735971.  The IMEI number is also engraved into the case of the phone. It is noted that an IMEI number is a 15 digit number unique to each device.  The AT&T records received identify the IMEI number as a 14 digit number which is identical to the sticker on the back of the device minus the number 1 as the last digit.

51.     As a result of the above-mentioned training and experience, I have learned that the

following characteristics are generally found to exist in varying combinations and be true in cases

involving offenders who send, cause to be sent, distribute, exhibit, possess, display, transport,

manufacture or produce material which depicts minors engaged in sexually explicit conduct.  Said

material includes, but is not be limited to, photographs, negatives, slides, magazines, other printed media,

motion pictures, video tapes, books, or similar items stored electronically on computers, cell phones,

digital devices, cloud storage accounts or related digital storage media.

    a.   Individuals who produce, possess, receive, distribute and/or advertise child pornography

       may receive sexual gratification, stimulation, and satisfaction from (i) contact with

       children; (ii) from fantasies they may have viewing children engaged in sexual activity or

       in sexually suggestive poses, such as in person, in photographs, or other visual media; or

       (iii) from literature describing such activity;

    b.   Individuals who produce, possess, receive, distribute and/or advertise child pornography

       may collect sexually explicit or suggestive materials, in a variety of media, including

       photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or

       other visual media.  Individuals who have a sexual interest in children or images of

       children oftentimes use these materials for their own sexual arousal and gratification.

       Further, they may use these materials to lower the inhibitions of children they are

       attempting to seduce, to arouse the selected child partner, or to demonstrate the desired

       sexual acts;

    c.   Individuals who produce, possess, receive, distribute and/or advertise child pornography

       almost always possess and maintain their "hard copies" of child pornographic material,

       that is, their pictures, films, videotapes, magazines, negatives, photographs,

       correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of

       their home or some other secure location.  Individuals who have a sexual interest in

children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years;

d.  Likewise, individuals who produce, possess, receive, distribute and/or advertise child pornography often maintain their digital or electronic collections in a safe, secure and private environment, such as a computer, cell phone, and surrounding area, and cloud storage accounts.  These collections are often maintained for several years and are kept close by, usually at the collector's residence or password protected device/account, to enable the individual to view the collection, which is valued highly;

e.  Individuals who produce, possess, receive, distribute and/or advertise child pornography also (i) may correspond with and/or meet others to share information and materials; (ii) rarely destroy correspondence from other child pornography distributors/collectors; (iii) conceal such correspondence as they do their sexually explicit material; and (iv) often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography; and,

f.  Individuals who produce, possess, receive, distribute and/or advertise child pornography prefer not to be without their child pornography for any prolonged time period.  This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

52.  These offenders obtain and/or traffic in materials depicting children engaged in sexually explicit conduct through many sources and by several methods and means.  These sources, methods and means include, but are not limited to, the following:

a.  Downloading via the Internet and other computer networks (web sites, peer-to peer file sharing networks, newsgroups, electronic bulletin boards, chat rooms, instant message conversations, e-mail, etc.);

b. Receipt from commercial sources within and outside of the United States through shipments, deliveries and electronic transfer;

c. Trading with other persons with similar interests through shipments, deliveries and electronic transfer, including but not limited to email exchanges; and,

d. Producing and manufacturing these materials during actual contact with children or manipulating children into creating such materials and providing them to the perpetrator.

53. Persons who produce, possess, receive and distribute child pornography place significant value on images of child pornography (and related materials). Since child pornography is illegal, it can be risky to obtain. Thus, producers, possessors, recipients and distributors of child pornography are very unlikely to destroy or dispose of images once they are obtained or produced. Indeed, it is well-established that producers, possessors, recipients and distributors of child pornography hoard their images (and related materials) for many years, rarely, if ever, destroying them. This is particularly true today, when most child pornography is obtained via the Internet and can be easily stored in digital format on a computer, cell phone, in a cloud storage account(s) and/or other data storage device. Accordingly, if a producer, possessor, distributor and/or recipient of child pornography saves a digital image and/or video on his computer, cell phone, or in cloud storage account that image and/or video is likely to be present on that device several years later.

54. Indeed, even if the producer, possessor, recipient or distributor of child pornography were to destroy the digital image and/or video (or attempt to destroy it), it is very likely that the image would still be present on, and recoverable from, the subject's computer, cell phone or digital device years later.

**CLOUD STORAGE AND DATA SYNCHRONIZATION OF SMARTPHONES**

55. Modern cellphones or smartphones can synchronize and backup data from the applications installed on the devices to remote storage locations. The remote storage locations are generally called cloud storage locations but can have different names depending on the storage platform.

Android smartphones, like the Samsung Phone, can backup and synchronize their data to Google Drive, Google's cloud storage location.

56.     Smartphones, such as Android phones, have unique identifiers that associate the smartphone with the smartphone's cloud storage location.  Android phones use email addresses to create this association. This unique identifier is referred to as the Google Account.

57.     Android phones synchronization and backup of data occur automatically by default. That is, when an Android phone is purchased and activated, the smartphone's operating system comes set to have at least some of the smartphone's data automatically synchronized or backed up. For example, Google applications (and some non-Google applications) on an Android smartphone will automatically synchronize or back up their data to the Google Account's Google Drive. Examples of Google applications installed on an Android smartphone that automatically synchronize or backup data with a Google Drive include: (1) Calendar, (2) Contacts, (3) Docs, (4) Drive, (5) Gmail, (6) Google Play Books, (7) Keep Notes, (8) Sheets, (9) Tasks, (10) Call History, (11) SMS and MMS messages (i.e., text messages), (12) Photos and videos, and some user device settings as well as Wi-Fi networks.

58.     For an Android smartphone, the synchronization and backup of its data can occur immediately (i.e., synchronization of data) or can occur at a regular interval, such as every night. However, the Android phone user can choose not to synchronize an individual application or all applications by unselecting the applications within the smartphone operating system settings. Furthermore, the Android phone user can choose not to back up their device's data, but individual choices here are unavailable.

59.     Smartphone synchronization and data backup make transferring their previous smartphone's data to a newly acquired device less effortful. In addition, these abilities help them to start using their new smartphone quickly and help to ensure that the new device is almost identical to the old one, at least for the synchronized or backed-up applications.

**PROBABLE CAUSE TO BELIEVE THAT THE EQUIPMENT CONTAINS EVIDENCE,**

**FRUITS, AND INSTRUMENTALITIES**

60.     Based upon the facts described herein, there is probable cause to believe that LATIMER is a producer, possessor, distributor and/or recipient of child pornography and an individual who traveled in interstate commerce to engage in a sex act with a minor who possessed images and/or videos of child pornography via the Latimer-9096 Phone in or about June 2023.  As a producer, possessor, distributor and/or recipient of child pornography, LATIMER likely places great value on these images and videos.

61.     The Samsung Phone (assigned phone number 617-774-7962 according to ATT records) is likely to contain data from previously used cell phones using the same Google Account as the Samsung Phone (jjlats.1998@gmail.com; according to ATT records). ATT records show that LATIMER's two previous numbers 857-417-9096 and 617-390-4504 each used the same Google Account. Therefore, it is likely that data from the devices who were assigned these phone numbers would have synchronized and backed up data to and from the same cloud account or Google Drive.

62.     The previously synchronized or backed up data could contain evidence showing communications between LATIMER and LAMOUNTAIN. For example, this data could include text messages (i.e., SMS or MMS messages) that were previously sent between the Lamountain-7072 phone and Latimer-4504 phone. At least one of these text messages sent from LAMOUNTAIN to LATIMER included a CSAM image containing the image of an identified child being sexually exploited. In addition, the Call History on the Samsung Phone could contain the call record showing the phone call from LATIMER to LAMOUNTAIN on June 29, 2023, that was approximately three minutes and 13 seconds in length. Further, the previously synchronized or backed up data could contain data from previous application installed on a prior phone.

63.     As discussed above, records from CashApp demonstrate that LATIMER used the same account on successive devices. In addition, saved text conversations demonstrate that LATIMER communicated with the same individual, LAMOUNTAIN, using successive devices.

64.     The Samsung Phone is currently being stored by investigators at their facilities as described in Attachment A.  From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

65.     Based upon my training and experience, I am aware that individuals frequently use computer equipment and cell phones to carry out, communicate about, and store records regarding their daily activities.  These tasks are frequently accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

66.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers.  Samsung phones, such as the one seized from LATIMER, are a type of smartphone. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages, e-mails, images and videos, and storing a vast range and amount of electronic data.  Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

67.     From my training and experience, I am aware that metadata contained in photos and videos can contain details regarding the production of the image, such as time and date, location data, or the device used to create the image.

68.     I am aware that smartphone applications may store location information.  For example, Google Maps, installed by default on Android devices such as the Samsung, may leave behind artifacts that help to determine the user's past locations.

69.     I am aware that it is possible to retrieve cell tower information during forensic examinations, potentially providing information about the location of the device.

70.     I am aware that it is possible to retrieve historical WiFi connections, which can sometimes reveal location information based upon an access point's BSSID or MAC Address as well as the SSID of the Network.

71.     From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B in mobile phones, computer hardware, computer software, and storage media.

72.     Based upon the facts above, there is probable cause to believe the Samsung Phone was used to store images and videos of depicting child pornography.

73.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet.  This is true because:

a.     Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost.  Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

b.     Even after files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time.  In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files.  It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d.      Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."  The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

**CONCLUSION**

74.     Based on the foregoing, I respectfully submit that there is probable cause to believe that the Samsung Phone contains evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime, namely Distribution, Receipt and Possession of Child Pornography, Traveling in Interstate Commerce to Engage in a Sexual Act with a Minor, and Sexual Exploitation of Children, in violation of Title 18, United States Code, Section 2252A(a)(2) and (a)(5)(b), 2423(b) and 2251(a).

75.     Accordingly, I respectfully ask that the Court issue the requested warrant authorizing law enforcement to search the Samsung Phone, as further described in Attachment A for evidence of the Target Offenses, as described in Attachment B.

_____
JENNIFER L. GEREGA
Special Agent
Federal Bureau of Investigation


Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1

on February _____16_____, 2024


_____
DAVID H. HENNESSY
United States Magistrate Judge